IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**OWNERS INSURANCE COMPANY,**
**Plaintiff,**

v.                                              No. 3:15-cv-00349-DRH-DGW

**JAMES C. WARREN**
**d/b/a WARREN EXTERIOR AND**
**REMODELING,**
**MICHAEL'S ON MARKET**
**OF WATERLOO, IL, LLC., and**
**MICHAEL CONRAD,**
**Defendants.**

### ORDER

**HERNDON, District Judge:**

Pending before the Court is plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) in a declaratory action under 28 U.S.C. § 2201 (Doc. 23). Owners Insurance Company ("Owners Ins.") seeks judgment in its favor, and a declaration stating that it has neither a duty to defend nor indemnify insured James Warren ("Warren"), d/b/a Warren Exterior and Remodeling, in a lawsuit stemming from a construction contract entered into with Michael Conrad and Michael's on Market of Waterloo, IL, LLC. (collectively known as "Michael's") (Doc. 1). Warren opposes the motion. (Doc. 28). Based on the following, the Court **GRANTS** the motion for summary judgment.

# I. Background

In February 2013, Owners Ins. issued an insurance policy to Warren which provided commercial general liability ("CGL") coverage during the period of April 25, 2013 through April 25, 2014 (Doc. 1-1)[1]. As relevant, the policy's Commercial General Liability Coverage Form 55300[2], Section I – Coverages, stated the following:

**COVERAGE  A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of *"bodily injury" or "property damage"* to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result.

   *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments- Coverages A and B.*[3]

   **b.** This insurance applies to *"bodily injury" and "property damage"* only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

---

[1] Policy Number 082304-07609602. Page 1 of the policy displays Common Policy Information and lists "Carpentry" as the business description, and policy coverage as "Commercial General Liability Coverage."  *See* Doc. 1-1 at 2.

[2] The Commercial General Liability Coverage Form 55300 clearly states, "[v]arious provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered."  *See id.* at 25.

[3] The section entitled "Supplementary Payments – Coverages A and B," does not contain any stipulation relevant to the instant cause of action.  *See* Doc. 1-1 at 35.

(Doc. 1-1 at 25) (emphasis added).  The relevant portions of Section V – Definitions state:

> **4.** "Bodily injury" means bodily injury, bodily sickness or bodily disease sustained by a person, including death resulting from any of these at any time.
>
> **14.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> **18.** "Property damage" means:
>
> > **a.** Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
> >
> > **b.** Loss of use of tangible property that is not physically injured.  All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. 1-1 at 41, 43, 44).

On November 26, 2013, Warren entered into a construction contract with Michael's to provide project management and restoration services of a restaurant (Doc. 1-2 at 9-10).  The relevant section of the General Agreement between Michael's and Warren stated:

> For valuable consideration, the parties agree to the following:
>
> > [Michael's] agrees to:
> >
> > > Pay James C. Warren 10% of 835 N. Market rehab project for being sole project manager + misc. duties that may arise at Michael Conrad's direction.  1st payment on Dec. 6, 2013 of $4,000.00 then $3,000.00 every 2 wks.  Both parties keeping all records until completion of proj. + settlement.

> [Warren] agrees to:
>> Due [sic] + carryout all duties of project manager to his best ability, manage subs, deal with city personnel, architect, utility persons, and any other tasks Michael Conrad deems nec. To project, all in timely, prof. manner + be on call when needed.
>
> No modification of this Agreement will be effective unless it is in writing and is signed by both parties. This Agreement binds and benefits both parties and any successors and assigns. Time is of the essence of this Agreement. This document, including any attachments, is the entire agreement between the parties. This Agreement is governed by the laws of the State of IL.

(Doc. 1-2 at 9). The contract was dated November 26, 2013, and was signed by both Michael Conrad and James Warren (*Id.*).

In December, 2014, Michael's filed a six-count civil complaint against Warren in the Circuit Court of St. Clair County, Illinois, alleging breach of contract, instances of conversion, unjust enrichment, and further requested an order compelling Warren to render accounting documentation (Doc. 1-2 at 2-8).

In May 2015—during the pending state court action against Warren—Owners Ins. filed a complaint in this Court against Warren and Michael's, pursuant to 28 U.S.C. § 2201, requesting entry of a declaration of rights and declaratory judgment stating that the CGL policy issued to Warren does not provide coverage or a defense for the claims asserted (Doc. 1). In June, Owners Ins. moved for summary judgment pursuant to Rule 56(a) of Fed. R. Civ. P., arguing that an "occurrence"—as defined by the CGL policy—has not been alleged because Michael's state court complaint seeks solely economic damages relating to Warren's failure to perform. As a result, Owners Ins. contends that no genuine

dispute as to any material fact exists, and therefore it is entitled to judgment as a matter of law (Doc. 23).

Warren, in opposition, contends that allegations set forth in the state court complaint trigger coverage under the CGL policy (Doc. 28). Further, Warren maintains that policy exclusions serving as the basis for the denial of coverage are inapplicable to allegations set forth in the complaint; therefore triggering, at minimum, Owners Ins. duty to defend Warren against Michael's state court claims.

## II. Legal Standards

In a diversity case, the Court applies state law to substantive issues, *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008), and federal law governs procedure, *Fednav Inern. Ltd. V. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). The applicable law is that of the state in which the federal court sits when neither party raises a conflict of law issue in a diversity case. *Id.* Under Illinois choice of law rules, litigants can stipulate to which substantive law applies to their case so long as the stipulation is reasonable. *City of Clinton, Ill. V. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987); *see also Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1219 n. 6 (7th Cir. 1995). The parties have cited to Illinois law, thus, Illinois law applies. To the extent that the Illinois Supreme Court has not yet spoken to any of the issues before the Court, the Court shall apply the law as it would predict the Illinois Supreme Court would if deciding the case. *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) (stating that duty of

federal court in diversity suit is to predict what state Supreme Court would do if presented with identical issue).

### A. Fed. R. Civ. P Rule 56(a)

Summary judgment is warranted when the movant shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in its favor, if the movant cannot "establish the existence of an element essential to [it's] case, and on which [it] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists only if the resolution of the factual issue might affect the outcome of the suit under governing substantive law. *Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1045 (7th Cir. 1996). All facts and reasonable justifiable inferences are construed in the nonmovant's favor. *Grimm v. Alro Steel Corp.*, 410 F.3d 383, 385 (7th Cir. 2005).

### B. 28 U.S.C. §2201 Declaratory Judgment

Under the Declaratory Judgment Act, federal courts may render judgment only where there is an "actual controversy." 28 U.S.C. § 2201; *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). In other words, there must be action on the defendant's behalf which causes the plaintiff to reasonably apprehend being sued if the plaintiff continues the problematic conduct at issue. Further, a plaintiff's reasonable apprehension must exist at the time the declaratory action is filed. *Id.* (citing *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980)). Thus, declaratory relief is sought for the purposes of " 'clarify[ing] and settl[ing] the legal relations at issue' and to 'terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (quoting BORCHARD, DECLARATORY JUDGMENTS 299 (2D ED. 1941)).

The "normal alignment of parties in suits seeking declaratory judgment of non-coverage is Insurer vs. Insured and Injured Party." *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998). This is because any finding that the insurer owes a duty to indemnify an insured mutually benefits the insured party and the injured party. While this alignment is generally true for declaratory judgments seeking indemnity, a duty to defend is different. In Illinois, a duty to defend is distinct and separate from a duty to indemnify. *Aetna Cas. and Sur. Co. v. Prestige Cas. Co.*, 195 Ill. App.3d 660, 664, 553 N.E.2d 39 (Ill. App. Ct. 1990). The issue of indemnification is not ripe until the underlying litigation is

terminated [to the point] there has been an actual judgment that requires payment from the insured or its insurer to the plaintiff. *Id.*

### C. Illinois Insurance Policy Interpretation

The Court must "ascertain and give effect to the intention of the parties, as expressed in the policy language" in order to determine what claims this particular policy affords protection against. *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 433, 930 N.E.2d 999, 1003 (2010) (quoting *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 17, 823 N.E.2d 561, 564 (2005). "If the policy language is unambiguous, the policy will be applied as written unless it contravenes public policy." *Standard Mut. Ins. Co. v. Law*, 2013 IL 114617, ¶ 24 (citing *Nicor, Inc. v. Associated Elec. and Gas Ins. Servs. Ltd.*, 223 Ill.2d 407, 416-17, 860 N.E.2d 280, 286 (2006). "If the words used in the insurance policy are reasonably susceptible to more than one meaning, they are considered ambiguous and will be construed against the insurer who drafted the policy." *Rich v. Principal Life Ins. Co.*, 226 Ill.ed 359, 372, 875 N.E.2d 1082, 1090 (2007).

### III. Analysis

### A. Failure to allege

Owners Ins. claims the underlying state court lawsuit—*Michael's on Market v. Warren*, 2014L000792—arose from Warren's alleged failure to perform, and that Michael's "claims [made] against Warren are nothing more than claims of disappointed expectations in the performance of a construction contract and not

the types of claims the [CGL] Policy is designed to protect against." Owners Ins. further contends that Michael's underlying complaint fails to allege an "occurrence" as expressed in the Section V – Definitions segment of the CGL policy. In Illinois, "[t]he words of a[n] [insurance] policy should be accorded their plain and ordinary meaning," *Nicor, Inc.*, 223 Ill.2d at 416, and "if the provisions . . . are clear and unambiguous there is no need for construction and the provisions will be applied as written," *U.S. Fire Ins. Co. v. Schnackenberg*, 88 Ill.2d 1, 4, 429 N.E.2d 1203, 1205 (1981), "unless such application contravenes public policy," *State Farm Mut. Auto. Ins. Co. v. Villicana*, 181 Ill.2d 436, 442, 692 N.E.2d 1196, 1199 (1998).

The plain language of the CGL policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In defining the term "accident," Illinois adopts the interpretation of the United States Supreme Court in *United States Mut. Accident Ass'n v. Barry*, 131 U.S. 100, 121 (1889) (defining "accident" as happening by chance, unexpectedly taking place, not according to usual course of things, or not as expected; if in the act which precedes injury, something unforeseen, unexpected, or unusual occurs which produces injury, then injury has resulted through accidental means). In other words, "if an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, and another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact, occurs, such unintended

result is deemed to be caused by accidental means." *Yates v. Bankers Life & Cas. Co.*, 415 Ill. 16, 19, 111 N.E.2d 516, 517-18 (1953). As a result, the CGL policy definition of "occurrence" is clear-cut and unambiguous under the *Nicor* "plain and ordinary meaning" contract interpretation standard. *See Nicor, Inc.*, 223 Ill.2d at 416. The policy is transparent in stating that:

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

An "accident" or "harmful conditions" stemming from an "occurrence" of "bodily injury" or "property damage" must be alleged in Michael's complaint against Warren in order activate the application of insurance coverage.

A comprehensive review of Michael's civil complaint (2014L000792) reveals that no allegations of "bodily injury" or "property damage" resulting from an "occurrence" have been alleged. To be more specific, Count I of the complaint alleges breach of contract "by failing to make reasonable progress on the project and failing to provide adequate oversight and supervision to [ ] employees and subcontractors"; Count II alleges conversion, in that Warren continues to possess the property purchased with Michael's credit card; Count III alleges conversion, in that Warren continues to possess the skid steer and has failed and refused to return the skid steer or reimburse Michael's for its value; Count IV alleges unjust enrichment of $84,054.82 plus costs by Warren accepting and receiving payments from Michael's without providing contracted services, making purchases on Michael's credit card, and failing to provide items purchased; Count V alleges

claims that Warren has been unjustly enriched by using Michael's skid steer without permission nor reimbursement; and, Count VI alleges Warren's refusal to render accounting records for money received. Michael's complaint against Warren is devoid of any claims relating to "bodily injury" or "property damage," and also fails to allege an "occurrence". Additionally, nothing in the contents of the complaint contravenes public policy.

### B. No duty to defend exists

In opposition, Warren argues that Owners Ins. duty to defend is triggered because Michael's claim against Warren "potentially falls within the coverage of the policy" under allegations made in Counts I-III. Further, Warren contends—with no supporting law—that language used in Count I, breach of contract, is akin to that of negligence; and, that if Warren's alleged conduct is construed as a negligent act, the negligent conduct forms a basis for an "occurrence" under policy coverage. The Court rejects this groundless argument. Michael's breach of contract allegation is construed exactly as stated—a breach of contract.

Next, Warren argues that Michael's allegations of property damage somehow initiate Owners Ins. duty to defend. Warren cites to *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.,* 168 Ill.App.3d 361, 366-67, 522 N.E.2d 758, 761-62 (Ill. App. 1988) in an attempt to explain that exclusionary clauses relied upon to deny insurance coverage must be resolved in favor of the insured. However, this contention is inapplicable to the instant context because the contractual clause at issue is not exclusionary—it is stipulatory.

## IV. Conclusion

The CGL insurance contract's plain language excludes coverage for the claims that Michael's alleged against Warren in its state court complaint. No "occurrence," "bodily injury," or "property damage" has been alleged and, as a result, Owners Ins. has no duty to defend Warren against allegations made in case number 2014L000792. The issue of indemnification is not ripe for consideration. *See Aetna Cas. and Sur. Co.*, 195 Ill. App.3d at 664. No genuine dispute as to any material fact exists, and Owners Ins. it is entitled to judgment as a matter of law. For the foregoing reasons, the Court **GRANTS** Owners Ins. motion for summary judgment.

**IT IS SO ORDERED.**

Signed this 31st day of January, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.01.31 12:17:23 -06'00'

**UNITED STATES DISTRICT JUDGE**